WILLIAM B. MORGAN *v.* RICHARD PALMER.

A reservation, in a grant, of "the rangeway if ever wanted for a road," is not a reservation of a private way, but is for a public highway, and the necessity for it is to be determined by the tribunals empowered to establish highways.

A court of equity will not entertain a bill to restrain the committing of an ordinary trespass, merely upon the ground that the defendant is not pecuniarily able to respond the damages that may be recovered.

THIS is a bill in equity in which the plaintiff seeks an injunction to restrain the removing, by defendant, of a pair of bars opening into the lane of the plaintiff, thereby exposing his fields and causing his cattle to escape, and asking for damages for injuries already caused in that way, and for general relief.

The plaintiff's case, as made by his bill, is that he is the owner of two tracts of land, one conveyed to him by White & Lund, and the other by Martha Elliott, in which last named deed is this clause, "reserv-

ing the rangeway if ever wanted for a road ;" and he alleges that it has never been wanted for a road, but that defendant claiming title to a way across that land, has frequently entered upon a passageway provided by plaintiff for his own private accommodation and destroyed the bars opening into said way, making the plaintiff's pastures common with the highway ; and that he threatens that he will continue to keep said bars down.

The answer alleges that in the original allotment of the town of Bow, where this land lies, a rangeway two rods wide was reserved on the southeasterly side of the Martha Elliott lot, and that being in want of a passage across it to other lands of the defendant, he and one Bond bought the whole lot of Martha Elliott, and afterwards bargained the southerly part of the lot to this plaintiff, reserving the rangeway if wanted for a road ; and to avoid a multiplicity of conveyances the said Martha Elliott conveyed the land so sold, directly to him.   That in pursuance of these arrangements the plaintiff fenced out said rangeway and it has become an open travelled highway used by defendant and said Bond and numerous other persons, and that plaintiff has no right to obstruct the way with bars ; and he claims the right to remove them.

*Marshall & Chase*, for plaintiff.

*S. C. & B. E. Badger*, for defendant.

BELLOWS, J.   The Martha Elliott tract was conveyed to the plaintiff, June 9, 1854, and the description appears to include what is now termed the rangeway ; at least one of the monuments on the southerly line is the hard pine stump, and that clearly is on the southerly side of this rangeway.   The reservation also assumes that the boundaries given include the rangeway, otherwise it would be absurd.

We are justified, then, in assuming that the tract so conveyed did include the rangeway ; and one question is as to the construction and effect of the reservation.   The language of it is, "reserving the rangeway if ever wanted for a road." If this is to be regarded as a reservation of a private way, it of course would be for the use of the grantor, and as the defendant sets up no title to it from her, he cannot claim it as a private way. We are, however, inclined to regard this as a reservation for a public highway if needed for that purpose ; and this view is fortified by the consideration that these rangeways were reserved and designated by the proprietors in their original allotments, for public highways if needed, their purpose being to embrace in each lot a certain number of acres exclusive of what might be wanted for roads ; practically, however, these rangeways, when not converted into public highways by the towns, have been treated as a part of one or both of the adjoining lots.

As these rangeways, then, were set apart for public highways, it would be most reasonable to construe the terms, " if ever wanted for a road," to mean a public highway rather than as reserving a private way. It might naturally be understood that a warranty of title to this rangeway would not be safe lest the town might assert a right to a road there,

without compensation; hence the propriety of the reservation. Besides, the reservation of a private way, if needed, without saying by whom, would be so extraordinary as to afford a strong argument against such a construction.

We are of the opinion, therefore, that the reservation of the range-way is for a public highway, and the necessity for it is to be determined by the tribunals empowered to establish such highways.

Another question is whether equity will take jurisdiction in this case. The main object of the bill is to restrain the defendant from leaving open the bars leading into the passage over this rangeway. That way appears to have been fenced out by the plaintiff on both sides, and extends to his Upton lot on which there is a mill. The distance from the turnpike to the Upton lot is over sixty rods, and the way seems to have been fenced out by the plaintiff for his own convenience, for access to his Upton lot and mills. For many years he has maintained bars across the way near the turnpike, and also near the other end; and also another pair leading from his barnyard into this lane, and so giving his cows access to his pastures on the Upton lot.

Independent of the circumstance that the defendant is shown to be wholly irresponsible, the case of *Bean* v. *Coleman*, 44 N. H. 539, is a decisive authority against the jurisdiction here.

The principal cause of complaint is that by leaving the bars down at the turnpike the plaintiff's cows would escape, and therefore he could not depasture the lane itself; and that in addition, he would be compelled to drive his cows farther to his pastures. This, however, admits of adequate compensation at law unless the irresponsibility of the defendant may be regarded as depriving the plaintiff of remedy in that form.

This raises the question whether, in ordinary cases, and where no great or serious injury is apprehended, this extraordinary power of a court of equity will be exercised when it is made to appear that the defendant is not pecuniarly responsible.

Applications of this sort are addressed to the sound discretion of the court; and in determining the exercise of it, the irresponsibility of the defendant would in some cases justly have much weight as was held in the case of the *Lake Company* v. *Worster*, 29 N. H. 449, where there was an attempt to tear down a costly dam. The irresponsibility of the party is doubtless one element to be weighed in these cases, but it is not decisive. If it were held to be so, it would soon be found that the jurisdiction of courts of equity would be equally enlarged by applications to restrain the committing of mere trespasses, and cases of that sort have heretofore been extremely rare both in the English and American courts. *Jerome & al.* v. *Ross*, 7 Johns. Ch. 333.

This summary and stringent power has always been exercised with great caution, and only when in the exercise of a sound discretion there is found to be a necessity for it, to promote the ends of justice and prevent serious mischief; and upon such views an injunction was refused in *Bassett* v. *Salisbury Manufacturing Company*, 47 N. H. 426.

Where the injury apprehended is not serious, nor in its nature irre-

parable, but the main object of a suit would be to settle the title, a court of equity, we think, ought not to interfere by injunction, even if the defendant be insolvent.

There are cases where the insolvency of the party has had an influence in determining the exercise of this discretion, but these have been cases of waste, or the like, going to the destruction of the estate, as in *Smallman* v. *Onions*, 3 Bro. Ch. 621 ; 2 Story Eq. Jur. 1, 916 ; but we find no case where upon that ground an injunction has been issued to restrain an ordinary trespass.

In the case before us the title was in controversy and the great point is to settle that. For aught we can see, that can be done by a suit at law, and therefore this bill must be dismissed.